It pleases the court, Lissa Shook on behalf of Mr. Rigby. The one-page statement of probable cause in this warrant application sought evidence created at least eight years before, evidence that had never been seen, was not created at the house to be searched, and for which there was no information in the warrant refreshing it. In apparent recognition of the staleness and nexus problems here, all the government offers to fill the eight-year gap between the creation of the only known evidence and the warrant application is that the photographs in question must be trophies. But this requires a leap of assumption that depends entirely upon Trooper Koch's opinion that child sex offenders maintain photographs of their victims. Yet the affidavit has no facts that Mr. Rigby has stored or collected these photographs. The victim did not say she had ever seen the photographs during the seven years she lived with him, or that he had ever referenced them. This lack of supporting facts makes this case very different from those in which the court has looked to an expert opinion to Well, I think if the affidavit had been, you know, this probably wasn't, the affiant here wasn't, didn't probably have the expertise that maybe sometimes you see in these type of cases. I've seen things where, you know, experts sort of of their opinion will say sort of compellingly that people that people that do these type of things do keep trophies of it, and you know that they want, you know, and I know that, you know, that if you see these cases often enough you see that people have huge numbers of files and that they, you know, that they like these files, they exchange them with others, it's a kind of currency, the whole type of thing. But I guess I'm seeing the government, do you think this case can be distinguished from the other on child pornography because the images that Mr. Rigby had were trophies like memorializing his sexual activities with his daughter as opposed to images of unknown victims. Does that differentiate this case or is it, we don't have anything exactly like this, I mean this was a long time ago. I don't believe it does. For one thing I would just point out that the affidavit itself does not say that child sex offenders would maintain photos any longer than child pornography collectors. And in the, it's true that there isn't a case that's directly, that is a parallel and exactly to this case, but in all of the other cases of this court's Fourth Amendment jurisprudence there are other facts bolstering that the photographs in fact have been kept. And here, you know, these were, this is evidence of a crime. So if they were looking for, obviously there were, you know, there were, there was a very significant period of sexual intercourse with his daughter. Apparently his daughter was impregnated and then had a child by her father. I don't know if you call that her grand, the grandchild or the child or what, what you call that. But there's, there's obviously, and those crimes, my understanding is the statute would have run. That is what the represented to the district court, that they were not able to charge it. And so then, and so she didn't report it within that period of time for whatever. And it went from when I think she was like 13 until she was 18. And then there was some indication that maybe it even happened a little later. And then the precipitating behavior here is, I don't know if you, I don't know if it qualifies for stalking, but he's starting, he's coming back, you know, he's coming around, he's causing some problems. And she throws back at him, well I'm going to tell the police what you did to me before. And he tries to commit suicide and then she goes to the police. Is that? That, that's the sequence of events. So if, if the, the crime that they would have to be looking for would be that he had, they couldn't have been looking for evidence, but they wouldn't have been able to charge him with everything that he did to his daughter over that period of time, right? That's my understanding. The government has asserted that they would have been able to possibly bring this under the Assimilated Crimes Act, charging the Maryland statute and using the federal statute of limitations, which wouldn't have run. However, that was never, that's never been offered before by the government. And so I think the only, the only evidence that they, well the only evidence that... But your sort of view is they were looking for something different than what the government said they were looking for, right? The government acknowledges, and Trooper Koch expressly testified at the evidentiary hearing that the only evidence that he had any reason to believe would be in the house that would have, it would have both consisted, would have both constituted child pornography and been evidence of the child sex abuse were these photographs. Well, let's stop because that makes a difference. They weren't looking for child pornography, correct? They weren't looking for child pornography per se. That was a consequence of what they found. So when you say, okay, first thing we need to look at is probable cause for what? And as I understand it, the probable cause related to the sex abuse. Are we all agreed on that? There's a foundation? Yes, although I'd also point out that the affidavit listed the wrong statute as far as... Right, but you both, nobody thinks that's a problem, right? Right, that's not a... So they're looking for probable cause to look for paraphernalia and other items, photos that might relate to sex abuse. And your challenge is that he doesn't really have enough information or training to make the leap that sex abusers might keep their photos. Is that right? Yes, the affidavit here is deficient of any facts establishing that evidence of child sex abuse that ended at a minimum six years before this warrant application was sought, would be found in this house. And none of that child sex abuse is alleged to have occurred in the house to be searched. And in fact, much of it occurred here in Washington State. Here in Washington, up on Whidbey Island or somewhere. Right, correct. So is it conceivable to you, had they gotten a certain type of expert and tied things together, that arguably someone could make a sufficient warrant here? No, I believe that the nexus issues, and particularly the staleness issues, this is just too attenuated. And the evidence, the only thing he had... So a better expert really wouldn't have solved the problem? A better... No, it would not. Although Trooper Koch, as you pointed out, was particularly thin expertise. We have cases, I mean that's one of the things, is where we have normal child pornography cases, usually if it's under sex abuse, there have been long delays. We've upheld ones that are like up to 16 years. So every case kind of has to fall on its own facts. I don't know where we would draw the line exactly. That's really a question of these kind of cases where you see some, there's two years here, three years here, 18 months, then there's a 16 year. How would you articulate where we would reasonably draw the line? In this case, I think the line can be drawn with the fact that there are no facts in the affidavit supporting that the photos have ever been seen, collected, that he is a collector. And then when you combine that with the extreme passage of time, this isn't like United States v. Gord or United States v. Lacey or Hay, where there are specific facts in the affidavit establishing the likelihood, the fair probability that the photos in question will be found in the defendant's house. Here you have allegations of child sex abuse that ended at least six years before. The only evidence known to be created as a result of that had to have been created at least eight years before. There is some harassment that is occurring around the time. Well, it kind of looks like, I mean, arguable, that he's coming around and then he's trying to get the relationship going again, but she's probably too old now. She was, she had a boyfriend at the time. She was like 27. She's older and more, you know, smarter and more able to defend herself now. Yes. When you get to the end of the day, then you have to ask the big question is, if you're faith exception apply here, given that he did have some training, that he made the connection, there might not be probable cause, but he did it all in good faith. Well, I think there are several reasons why good faith should not apply here. First, just that this affidavit is so lacking in indicia of probable cause in light of the extreme staleness and lack of nexus. But also, it's important to keep in mind that United States v. Leon, and the Supreme Court specifically instructs that it's necessary to consider the objective reasonableness of all the officers involved. So who served the, was he a Fiat, one of the officers that served the warrant or were there other officers or how, what had that come down? So this was a rather, this investigation got somewhat complex. It began with the victim reporting to the Maryland State Police. State Trooper Koch is the one who prepared the affidavit. He had, by the time that he prepared the affidavit, turned the investigation over to Naval Criminal Investigative Services. And so, at the time that he's filling out his warrant application, Naval Incriminated, excuse me, NCIS had just interviewed the victim. And the victim had told them that, she told them information that significantly diluted probable cause and nexus even further, which was namely that the photographs were taken in Washington State between about 1995 to 96. So they were at least 11 to 12 years old. Apparently, it had been in one session that the victim had never seen the photographs. She didn't know what he had ever done with them or if he had ever gotten them developed and that she thought he had used a traditional 35 millimeter camera. Now, NCIS apparently, according to Trooper Koch's testimony at the evidentiary hearing, did not, he never learned that information before he applied for the warrant application. Although he was, he did talk to NCIS Agent Austin before he submitted the application to the state court judge. But to the extent that Agent Austin did not communicate that information to Trooper Koch before he applied for the warrant, but thereafter relied upon the warrant for the search. So who served the warrant, NCIS? They all, it was a combination. Trooper Koch was the only state trooper who accompanied them in executing the warrant.  It was about, I believe, four. Let me ask you this, though, now that, but they found the photos, okay? So the next warrant, when you write it, the expert could say that we found photos memorializing something that happened this much before. Could then, okay, it's not this case, but if in the next case we, you know, because you're saying, oh, what's the likelihood that you would find it? Now we have a case where we know that we found it. So can we write in the next warrant? Well, no, because I still think you have, well, I don't believe that it can be supported here to. But what I'm saying is there is some evidence after this case, which I'm not going to consider for this case. But now there is some evidence that an expert could say, I've handled cases where, in fact, the victim said it happened, you know, dah, dah, dah, dah, dah, dah, dah, dah, and when we got there, they were there. So people do keep them. Well, I think if you just go back to this Court's traditional Fourth Amendment jurisprudence, it requires that there be facts in the affidavit supporting that conclusion. Well, it isn't in this affidavit. I agree. But I'm just saying. If you had gotten diverted, would you go back to Leon? Because that seems to me to be an important aspect here. Certainly, Your Honor. I was trying to figure out where Leon is. I diverted you. It's not your fault. It's my fault. Okay. So Agent Austin, given that she knew information, she had learned information that significantly diluted probable cause even further. She communicated with Trooper Koch before he executed, before he prepared the affidavit here. She did not have reasonable grounds for believing that the warrant was properly issued. She meaning? Sorry. Agent. It's Agent Patrice Austin. She's the NCIS agent? She's the NCIS agent. Mm-hmm. So under that analysis, I believe good faith does not apply. Good faith does not also apply because at the very least, Trooper Koch recklessly disregarded the truth. He did not ask the obvious questions of the sole source of the information for the warrant about the only evidence she was telling him might exist, namely, when were the photographs taken? Where were they taken? Did you ever see them? What kind of camera was used? Questions that were so obvious that they were used, that were asked by the NCIS agents, and the answers to which clearly further diluted probable cause. I think it's also worth noting that he's holding himself out as an expert, but he's not asking what seem to be fairly basic investigative questions. In light of this, this seems to be a minimum willful ignorance of crucial facts and amounts to recklessness. And here, where you have the least amount of nexus, most staleness, it should require more facts supporting the warrant, not less. And the government has cited this court's cases in Gord and Huggins for the idea that failing to inquire further is at most negligent. However, I think if you look at Huggins, it involved an investigation of a contemporaneous crime at the property to be searched. And here, we're dealing with a crime that happened many years ago and in a very faraway place. If the court doesn't have any further questions, I'd like to reserve a few seconds. Thank you. Thank you. Good morning, Your Honors, and may it please the court. My name is Michael Morgan. I represent the United States on this appeal. As the court has recognized, while Mr. Rigby was ultimately convicted of a child pornography offense, this was not a child pornography investigation. First, I have a question. This is obviously, this guy did a lot of really bad things, but when you go get a search warrant, it seems that you would believe that you could charge someone with a crime. You just don't say, you're a bad person, and so at any given time, I'm sure that you have bad things at your house. That's not a basis to go get a search warrant. What crimes could he have been charged with when all of this was going on? Because it seems like the statute probably had run the acts with his daughter. That's what I don't, I can't tell from this record. Well, that's actually interesting, Your Honor. If we're talking about state crimes, it turns out that Maryland has no statute of limitations for any felonies, so there's no temporal bar to any felonious prosecution in Maryland. The only potential problem would have been in Maryland was that this abuse apparently occurred on a naval institution, a naval base. Now, the record is silent as to whether federal jurisdiction over that enclave is exclusive or concurrent, so we don't know, but it ultimately doesn't matter because under Maryland law, it's perfectly appropriate for a state judge to issue a warrant to obtain evidence for any crime as long as it can be charged in any jurisdiction. So I think the fact that at the time they're doing the investigation, it may be unclear whether or not this is going to be a state prosecution or a federal prosecution really is immaterial. There's no doubt that there's probable cause to believe that a crime has occurred. I don't think there's any doubt about that. On the sexual abuse, you're saying? Well, certainly on the sexual abuse. There's no doubt there's probable cause for that. I don't think the defense really contests that there's probable cause to believe a crime occurred. The question is simply whether or not it was reasonable to believe that evidence of that crime would have been found at Mr. Ridby's residence in Maryland. I think that's really the crux of the case. I would also point out, though, that as Trooper Cook did testify at the Franks hearing, given the nature of the abuse and the nature of the suspected photographs, I mean, he probably could have been charged in state court with possession of child pornography based on, and there would arguably have been probable cause for that. Now, that wasn't the nature of his investigation, and he certainly didn't identify that in the warrant. But if we're just talking in general. Well, you wouldn't have probable cause in this warrant to search for child pornography, would you? I would argue we would. You wouldn't have probable cause as that being the basis for the warrant. Well, I would argue that we would, but I don't think it's, I don't think it's, I think you could read the warrant sufficiently to say, I mean, I actually think this is a very natural reading of the warrant. The warrant says that Mr. Ridby sexually abused his daughter over a period of six years and that the victim reports that he took new photographs of her. I mean, the common sense inference to be drawn from that is that he's photographing the abuse. That's the inference the district court drew. That's certainly the inference the issuing court drew, and I think it's a very rational inference that this court can draw. So I think that to the extent the court is willing to accept that there's probable cause to believe that those photographs documented the sexual abuse, well, given the nature of the abuse, there's also probable cause to believe that they were probably child pornography under the definition. Do you think it's important that the judge might have wanted to know that the only photographs at issue were at least seven years old, taken with a 35 millimeter camera and were not taken in Maryland? Well, Your Honor, there's a couple of responses to that. One is Koch didn't know that. The evidence is indisputable that when Koch submitted the application. So then, just to divert a little, then you go to the affidavit is okay, but the execution of the affidavit is this joint effort. Does that complicate things? I don't believe it does for a couple of reasons. First of all, there's nothing in the record to say that it was a traditional 35 millimeter camera. The victim said she thought it might be a 35 millimeter. Well, 35 millimeter simply refers to the lens. There's 35 millimeter digital cameras as well. So this idea that it meant that it was a traditional camera is simply, that's not what the record shows. With respect to when the photographs were taken, I don't know that it would have made a difference to the judge. I mean, certainly the judge knew, based on the affidavit, that they were at least six years old. Trooper Koch didn't represent that the photographs were taken in Maryland. And in fact, the affidavit made clear they could have been taken in Florida as far back as 1994, given what was there. So the fact that it could have been supplemented with information that, okay, they might have been taken in Florida in 1994, they might have been taken in Washington between 1995 and 1997, I don't think would have made a bit of difference to the issuing judge. The bottom line is the nature of the photographs, it didn't matter when they were taken. It was perfectly reasonable for the issuing judge to conclude that Rigby was going to hold on to those photographs forever. Well, they're very, well, they're, but Koch, is that the, the, he wasn't the most expert I've ever seen in these affidavits. I mean, as an affiant, he obviously, I would say, had more expertise than just a person on the street. But sometimes in affidavits, you see people that, you know, they really have an emphasis in this area, speak at great length about their training, and the type of things that they know about people that commit these type of crimes, and all of that. And none of that is here. And that Poehn's counsel is, you know, pointing to the thinness of his expertise and the thinness of really details that tie all that together in his expertise. What's your response to that? I'm not sure that that kind of detail is necessarily required. Would it be better? Sure. Does that inform the issuing judge? Of course. However, Koch specifically testified that he had received training in these type of offenses, that he had executed warrants respect, with respect to these type of offenses, and that based on his training and experience, which was at least two years in this particular field, he was able to draw the conclusion that child sex abusers maintain these photographs, and that they maintain them in digitally stored media. Is there anything unique about the fact that it's his daughter? Of course there is, Your Honor. That it distinguishes this case from just the garden variety child pornography case. Now, we know that child pornographers in general tend to hoard their materials, but this is different. This is his daughter. Nobody goes- Well, we know. Does the affidavit say that? The hoarding? Oh, we're talking about, I'm not talking about the child pornography. I'm saying in general, we know that child pornography is hoard, but Your Honor makes a very good point. These are photographs of his daughter. And not only that, they're photographs of him sexually abusing his daughter. People don't take those type of photographs to just toss them in the trash. They take them because they want to relive the experience. And that's why it was perfectly reasonable for the judge to conclude that these are the kind of photographs that are going to be maintained forever. And I would point out, as Your Honor was suggesting, that, well, maybe this affidavit, there was no objective facts to support Koch's belief about the potential to hold onto these materials. In fact, there was. This affidavit was submitted in 2007. In 2003, the Maryland Court of Special Appeals had upheld a warrant where it had shown that the defendant had hoarded the materials for 16 years. So, in his own jurisdiction, the courts had recognized this. How does this all factor into the, we were talking about the Leon? Well, I think the Leon, there's a couple of responses I want to make to the Leon argument, but the first is, there is nothing that Trooper Koch could have done that would have, to make this a better case for good faith. Not only did he submit his application to a prosecutor for review, he got a state judge to approve it, but more importantly, it complied with the law of his jurisdiction. This warrant was perfectly good in the Maryland courts. He had no reason to suspect otherwise. You're saying it was perfectly good because there's no statute of limitations? No, I'm saying it's perfectly good because the Court of Special Appeals in Maryland, in the Barrell case, specifically upheld a warrant that was very similar to this. It was abuse that occurred in another state that was 16 years before the warrant application, and it was documenting sexual abuse of the victims. And that court had no problem saying that 16 years, not stale because of the nature of the photographs, is the kind of materials that the abuser is going to hold on forever. Now, that's the law in his jurisdiction, and that case was decided four years before this warrant application. Is this further, is this an extension of anything we have in the Ninth Circuit right now? I don't believe it is, because as I read the Ninth Circuit cases, the vast majority of the staleness cases revolve around child pornography prosecutions, and the government is not taking the position that in the garden variety child pornography, child pornography of, you know, unrelated children that you download from the Internet, what have you, that the same staleness analysis would apply. This is different. This is a different type of case, it's a different type of abuse, and it's a different type of... It would be nice to see that in the affidavit. In other words, we do know that there's delayed reporting in child abuse cases, so it is not uncommon that they would come forward years later. That distinguishes it right there from a typical child pornography case. And if there's delayed reporting, but there's also hoarding if they're same family, inter-familial sexual relations, you know, that's the kind of thing it would have in the affidavit. So you're making the argument, but it's not one that's in the affidavit, right? Well, it's not as expressly articulated as I'm making it now as in the affidavit. The affidavit is short, it's to the point, but short. But nevertheless, I mean, I think the officer said that he had the investigative experience, the training, the specialized training, and he drew his conclusions based on that. I'm unaware of any case that requires the officer to sort of list his CV of all of his particular classes that he's taken and all of that stuff. While it would certainly inform the issuing judge, I'm not sure that's legally required. I think the judge can rely on the officer to, you know, when he's representing his training and representing his experience and the conclusions he draws. I think under this Court's cases, the officer can rely on that. With respect to, unless the Court is going to put the question with regard to the Franks question, because that sort of overlays a little bit of the good faith. The idea that somehow what Agent Austin knew somehow diminished the probable cause, well, that's never been argued anywhere at any time until argument here. So I don't think that argument's quite properly before the Court. But nevertheless, again, what Agent Austin knew, first of all, the record's undisputed that Cope didn't know it when he was making the application. So you can't recklessly disregard or intentionally omit information you don't know. This Court's cases are very clear on that. So it really boils down to, do we think Trooper Cope did a good enough investigation? But that's just not what Franks is about. Franks is about whether the officer was honest to the judge. And here we have a finding by the district court that he was completely honest with the judge. So I don't think there's any real Franks problem. And with respect to, and I think I've discussed with some other factors, what Agent Austin knew didn't in fact diminish the probable cause. All she did was pinpoint the time in which these photographs took place. But again, that's immaterial in the circumstance of this case. Similarly, whether or not the photographs were taken with a 35 millimeter, a digital, a film camera, again, that doesn't matter. Because we're looking for the photographs and the warrant wants any photographs. So that doesn't diminish probable cause. And I can't really think of anything else. Wait, let me, what if this young woman were actually 45 and she came forward with this evidence so that the photographs were 25 years old? In your view, would that change anything? It would change nothing, Your Honor. It's, the nature of these photographs are such that they're just not going away. We don't have to go in this case to that length. But if you're asking me, I would say yes. I would say there is no temporal limit for this kind of evidence. And I actually think the reported cases out there that discuss these facts back me up empirically. These people don't get rid of this material. But with respect to sex offenders and lengthy periods of maintaining, what do you think is the best case on that? That's clearly the Barrow case. That's clearly the Barrow case. But also, the New Hampshire case is very good, as well as the Michigan case. And from the federal courts, it's not quite as long, but the Tenth Circuit's Ricci case is very good. That's five years, where there's a five year gap. Now here, we're only talking between six and seven. I mean, honestly, when you start talking five, six, seven years, it really, I'm not sure it starts to make much of a difference at that point. I think the common theme from those cases is that it's the nature of the material. It's just not going to be destroyed. And the location of this being in a different state doesn't change anything. Is that correct? No, it doesn't. Because again, it's the kind of stuff that you're going to take with you when you move. And I think the courts have all recognized that. If you accept that these are the kind of materials that are trophies, they're keepsakes, well, you're not going to throw them out when you move. You're going to take them with you. And the Eighth Circuit's Assummage case recognizes that, as well as the Barrow case. So I don't think that that's a difficulty here. The location is irrelevant. Unless the court has any further questions. Thank you, Your Honor. Well, it seems the government is advocating for a sexual abuse exception to the staleness and nexus requirements of the Fourth Amendment. Just a blanket exception. The case law does not support blanket exceptions for certain types of cases. Probable cause is to be determined on a case-by-case basis. He, excuse me, the government relies particularly on the Burrell case from Maryland. That case, as discussed in the reply brief, did deal with a 16-year gap. However, the victims there had seen, at least one of the victims had seen photographs taken of himself and stored in a specific place in the defendant's home. And another victim had seen the same item. It was a footlocker that was specifically being searched for. Described it as a piece of furniture. And as described in the reply brief, the court relied upon that this was a piece of furniture and was not incriminating in and of itself as part of its reasoning for upholding probable cause in that case. In terms of it being irrelevant as to whether it was on a digital camera or a traditional camera, the search warrant here sought all of Mr. Rigby's electronic storage devices. And we are, I think it's important to keep in mind, you know, 2011, yes, digital cameras are used widely. They're probably the most common form of camera. These photographs were taken in the 1990s, and there's nothing in the record establishing that that was the common mode of use at the time. I think the warrant, though, says that it's common for sex offenders to store their materials electronically, correct? Well, actually what the warrant says is that it's common for sex offenders to store other forms of child pornography on such devices. It doesn't actually say that it's common for them to store the photographs of their victims on the devices. You have more than used your time. Pardon me, Your Honor. Thank you. Further questions? All right. Thank you. The case just argued is submitted for decision. Thank you both for your helpful argument in this case.
judges: Schroeder, McKeown, Callahan